UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARCUS WASHINGTON,<br><br>　　　　　　Petitioner,<br>　v.<br>WARDEN WILLIAM GITTERE, *et al.*,<br>　　　　　　Respondents. | Case No. 3:19-cv-00256-MMD-CSD<br><br>ORDER |

**I.	SUMMARY**

This is a habeas corpus action under 28 U.S.C. § 2254. Before the Court is Petitioner Marcus Washington's motion for discovery. (ECF No. 67 ("Motion").) The Court finds that the requested discovery might demonstrate that Washington would be entitled to relief. The Court therefore grants the Motion in part. The Court further grants Respondents' two unopposed motions for extensions of time to file an answer. (ECF Nos. 86, 88.) The Court postpones the deadline for filing an answer until after completion of discovery.

**II.	BACKGROUND**

On July 24, 2011, Robert Hicks, also known as Red Mack, was shot and killed in a small apartment complex in Las Vegas. An eyewitness, Donald Williams, told the investigating detectives that Washington, his nephew, was the shooter.[1]

On July 25, 2011, Detective Barry Jensen interviewed Devin Belanger. She told Jensen that she saw another person, Jason Owens, also known as Playboy, shoot Hicks. (ECF No. 17-1.) Jensen investigated Hicks, including an interview with Hicks, and concluded that Hicks was not the shooter.

---

[1]Unless cited otherwise, the Court draws its facts from the Nevada Supreme Court's summary in its direct-appeal order of affirmance. (ECF No. 18-3.)

On July 27, 2011, police had a confidential informant perform a controlled purchase of narcotics at 300 Madison Avenue, Apartment 2, in Las Vegas ("300 Madison"). Police then obtained and executed a search warrant for narcotics at 300 Madison. Police did not find narcotics in the apartment, but they did find loose ammunition, two loaded magazines, a pistol hidden in a wall, Washington, and two other people. Police then obtained another warrant to search the apartment for ammunition, firearms, paperwork showing a possessory interest in 300 Madison, and collection of epithelial cells from Washington by a buccal swab, for possible DNA identification. (ECF No. 18-20.) Washington was arrested for the murder of Hicks. The pistol was taken into evidence and tested later. The pistol was not the murder weapon. (ECF No. 40-1 at 159-61.)

Washington was charged with first-degree murder. (ECF No. 17-4.) The prosecution sought the death penalty. (ECF No. 28-14.)

Washington wanted Belanger to testify not only that she saw Owens shoot Hicks but that she also heard Owens admit to shooting Hicks.[2] In the middle of the trial, the trial court held a hearing under *Petrocelli v. State*, 692 P.2d 503 (Nev. 1985), out of the jury's presence, to determine whether that hearsay was admissible. "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused in a criminal case is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." NRS § 51.345(1). The defense first called Belanger. The trial court examined Belanger. The prosecution wrote a few proposed questions; the defense did not. The court asked questions only about the circumstances surrounding Belanger hearing Owens' statement. The court determined that there were no corroborating circumstances that clearly indicated the trustworthiness of the statement. (ECF No. 39-1 at 15-27.)

The defense argued that Belanger acted as the confidential informant who did a controlled purchases of narcotics at 300 Madison on July 27, 2011, and thus she was a

---

[2] Nobody could find Owens to call him as a witness.

reliable witness who could testify about Owens' statement that he had killed Hicks. (*Id*. at 39-40.) Defense counsel Christopher Oram said that Belanger had indicated to him that she had gone to 300 Madison on July 27, 2011. (*Id*. at 40-41.) The prosecution later noted that they had spoken with Belanger before the trial, and that Belanger had said that she was a confidential informant, but they did not learn the details because the court had ordered both parties to not speak further with her. (*Id*. at 59.)

The defense then called Detective Steven Perry, who was the affiant for the first narcotics search warrant on July 27, 2011. Perry testified that he did not know Belanger, let alone employ her as a confidential informant. He also testified that the confidential informant was a male, as stated in the search warrant's application. Perry testified that he obtained his information about 300 Madison both from the confidential informant and a citizen source. Perry did not remember the true name of the confidential informant, but he did remember the confidential informant's nickname because that was what he used when conversing with the confidential informant. After much argument about divulging the name of the confidential informant, Perry wrote down the nickname of the confidential informant on a piece of paper and handed it to the trial court. The court looked at the nickname, stated that it was not Belanger, and destroyed the paper. (*Id*. at 42-56.) The next day, the court noted that it never heard that nickname in any of the testimonies. (ECF No. 40-1 at 10.) The court denied the defense's request to divulge the name of the citizen source. The defense stated that they would not call Perry as a witness, but the prosecution stated that they would call him as a rebuttal witness. (ECF No. 39-1 at 57.)

Perry explained the difference between a confidential informant and a citizen source. A citizen source usually does not work for police in performing controlled purchases. A citizen source usually is a person who has information and provides that information to the police. If a citizen source asks the police to keep his or her identity secret, the police will try to honor that request. A confidential informant goes through a screening process and background checks before being enrolled. The police would need to verify the potential confidential source's identity, regardless of the nickname. A

confidential source works specifically with a detective or officer and the partner. (*Id*. at 55-56.)

After the *Petrocelli* hearing concluded, the trial resumed. Devin Belanger testified for the defense. On direct examination, she testified that she saw Owens shoot Hicks. Oram did not ask her whether she was a confidential informant. On cross-examination, among other matters, Belanger testified that she had been a confidential informant for the narcotics division in the past, that she was the confidential informant who performed the controlled purchase of narcotics at 300 Madison on July 27, 2011, and that she did not see Washington inside 300 Madison. (*Id*. at 211-13.)

The next day, the prosecution called three detectives to rebut Belanger's testimony that she was the confidential informant: Joe Zepeda, Dale Anderson, and Steven Perry.

Zepeda testified that Jensen called him and said that Belanger might have information to purchase a gun. Zepeda picked up Belanger. Zepeda testified that Belanger had said that the gun was the murder weapon in the Hicks case, and that the gun was at 300 Madison. Zepeda also testified that Belanger had said that she had confronted Washington about his shooting of Hicks, that Washington might be at 300 Madison, and that Washington was angry with her about a debt that she owed Washington. Zepeda drove Belanger past 300 Madison, which she confirmed. Zepeda eventually took Belanger to a police station, where a round-table discussion on Perry's narcotics operation at 300 Madison would be occurring. Zepeda testified that he handed Belanger off to Anderson. (ECF No. 40-1 at 21-39.)

Anderson testified that he took Belanger to an interview room. He had her complete a couple of forms related to becoming a confidential informant. However, the round-table discussion decided to stick with Perry's initial plan and confidential informant. Anderson then shredded the forms. (*Id*. at 111-16.)

Perry testified that Belanger was not the confidential informant, that she was not at 300 Madison during the execution of the search warrant, and that he did not know her. (*Id*. at 126-30.)

In sum, originally Washington wanted to use Belanger's claim that she was the confidential informant at 300 Madison to reinforce his request to allow Belanger to testify that Owens admitted to killing Hicks. Instead, the prosecution used Belanger's claim that she was the confidential informant at 300 Madison to impeach the credibility of her testimony that she saw Owens kill Hicks.

### III.  LEGAL STANDARD

Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts allows the court to authorize discovery, and the court may limit the extent of the discovery. If, through "specific allegations before the court," the petitioner can "show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

### IV.  DISCUSSION

#### A.  Good Cause Exists to Grant Discovery

Washington seeks discovery to obtain the confidential informant file for the confidential informant who performed the controlled purchase of narcotics at 300 Madison on July 27, 2011, and the citizen source file of the other person who provided police information about 300 Madison. Washington argues that these files would support the following grounds:

> 2(a)  The state suppressed materially exculpatory and impeachment evidence pertaining to Devin Belanger's cooperation with law enforcement in violation of Washington's due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution;
>
> 2(b)  The state engaged in egregious misconduct, in bad faith, by arguing that Belanger was not a confidential informant; and
>
> 2(c)  The state engaged in egregious misconduct by presenting false testimony regarding the investigation of 300 Madison Avenue and statements purportedly made by Belanger to Detective Zepeda that incriminated Washington.

(ECF No. 16 at 17-40.) These claims all relate to the detectives' rebuttal testimonies.

The Court finds that the facts of Belanger's confidential informant file and citizen source file may allow Washington to demonstrate that he is entitled to relief. If Belanger was the confidential informant on July 27, 2011, then it would demonstrate that much of the testimonies that Washington describes in ground 2 were untrue. Additionally, grounds 3(a) and 3(b) are claims that trial counsel failed to move to strike the rebuttal evidence, and Belanger's confidential informant file would reinforce those claims. In ground 1, Washington claims that the trial court erred in finding untrustworthy Belanger's hearsay testimony that Owens admitted to killing Hicks. If Belanger was the confidential informant, then she might have been trustworthy.

The Court does not find that discovery of the confidential informant file or the citizen source file of anyone else is warranted. If somebody else was the confidential informant who performed the controlled purchase at 300 Madison or the citizen source who gave police information about 300 Madison, neither fact would demonstrate that Washington would be entitled to relief. Additionally, the Court needs to consider the confidentiality of those files. Disclosure of those files would disclose the identities of those people, who might find themselves in danger if others knew that those people provided information to the police.

### B.     The Court Grants the Motions for Extension of Time

Respondents ask for extensions of time up to March 2, 2022, and then to April 1, 2022, to file their answer to the first amended petition. (ECF Nos. 86, 88.) The Court grants these motions. Instead of setting a due date now, the Court will wait until discovery is complete to set a due date for the filing of the answer.

### V.    CONCLUSION

It is therefore ordered that Washington's motion for discovery (ECF No. 67) is granted in part. Respondents must disclose any and all documents, including reports and communications, prepared by the Las Vegas Metropolitan Police Department and pertaining to Devin Belanger being the confidential informant and/or citizen source

employed by law enforcement on or about July 27, 2011, in relation to the investigation of criminal activity in that property located at 300 Madison Avenue, Apartment No. 2, Las Vegas, Nevada.

It is further ordered that discovery must be completed within 90 days from the date of entry of this order. Washington will have 30 days from the completion of discovery to file and serve any appropriate motion. The parties are directed to file a joint status report on the earlier of upon completion of discovery or within 90 days.

It is further ordered that Respondents' motions for extension of time (ECF Nos. 86, 88) are granted. Respondents need not file and serve an answer until further order of the Court.

DATED THIS 29th Day of March 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE